# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| ONE, BLACK, LG SMART CELLULAR PHONE, | ) |
| WITH A BLACK K10 PROTECTIVE CASE; ONE, | ) |
| SILVER, LG MODEL LG-H932 SMART | ) |
| CELLULAR PHONE WITH IMEI NUMBER: | ) |
| 358165-08-109362; AND ONE, BLACK, LENOVO | ) |
| N22 LAPTOP, MODEL 80S6, WITH SERIAL | ) |
| NUMBER: TD02E8V7, CURRENTLY LOCATED | ) |
| IN DENVER, COLORADO, ATF FIELD | ) |
| DIVISION 950 17th ST., DENVER, COLORADO | ) |
| 80202 | ) |

Case No.    19-sw-06296-KLM

## APPLICATION FOR A SEARCH WARRANT

I, Jessica Akerson, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the _____State and_____ District of _____Colorado_____, there is now concealed

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) and 924(a)(2) | Possession of a firearm by a convicted felon |
| 21 U.S.C. § 841(a)(1) | Knowingly distribute and possess a Schedule I Controlled Substance |
| 18 U.S.C. § 924(c)(1)(A). | Knowingly use and carry a firearm in furtherance of a drug |

The application is based on these facts:     trafficking crime
- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**SEE "ATTACHMENT C"**, Sworn Statement of Special Agent Jessica Akerson, which by this reference is incorporated herein

s/Jessica Akerson
_____

Jessica Akerson
*Federal Law Enforcement Officer, ATF*

Sworn to before me and:     ☐ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

Date:    *17 Dec 2019*

*Judge's signature*

Kristen L. Mix
United States Magistrate Judge

City and state:    Denver, CO

## ATTACHMENT A

### DESCRIPTION OF PERSON OR PROPERTY TO BE SEARCHED

a.  One, Black LG Smart Cellular Phone with a Black K10-Protective Case;

b.  One, Silver, LG, Model LG-H932 Smart Cellular Phone with Serial Number: 358165-08-109362;

c.  One, Black, Lenovo N22 Laptop, Model 80S6, with Serial Number: YD02E8V7.

The Devices are currently located at 950 17th St., Denver, Colorado 80202. This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### DESCRIPTION OF PROPERTY TO BE SEIZED AND SEARCHED

All records contained in the electronic device described in Attachment A that constitute contraband, fruits, instrumentalities, and evidence of violations of: 18 U.S.C. § 922 (g)(1), felon in possession of a firearm; 21 U.S.C. § 841(a)(1) and 846, manufacturing, distributing and/or possession of controlled substances and conspiracy to do so; and 18 U.S.C. § 924 (c), to use, carry, and brandish a firearm during and in relation to a drug trafficking crime; including and involving William GEBERS since February 25, 2018, including any and all electronic data including any names, phone numbers, addresses, contact information, data, text messages, images, audio files, photographs, videos, Internet sites, Internet access, documents or other information, contained in the internal, external or removable memory or memories of the device.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT:

### SWORN STATEMENT OF SPECIAL AGENT JESSICA AKERSON
### IN SUPPORT OF SEARCH WARRANT APPLICATION

Your affiant, Jessica Akerson, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.       Your affiant is presently employed as an ATF Special Agent stationed in Wyoming. Your affiant received a Bachelor's degree in Psychology from the University of Maryland, Baltimore County in 2010. Your affiant was a detective with the State of Maryland and assigned to the Warrant Apprehension Task Force from November of 2011 to November of 2015.  In June of 2014, your affiant was deputized with the United States Marshalls Service and assigned to the Capital Area Regional Fugitive Task Force.   Your affiant is a graduate of the Federal Law Enforcement Training Center and the ATF National Academy.  In 2016, your affiant arrived at the Cheyenne, Wyoming ATF Field Office.  In 2018, your affiant completed Interstate Nexus School at the ATF Seattle Field Division in Seattle, WA and became a certified Interstate Nexus Expert.

2.       As a result of your affiant's training and experience as an ATF Special Agent, your affiant is familiar with Federal criminal laws and knows that it is a violation of Title 18, United States Code, Section 922 (g)(1) for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. It is a violation of Title 18, United States Code, Section 924(c)(1)(A) to knowingly carry and use a firearm, during and in relation to a drug trafficking crime, for which they may be prosecuted in a court of the United States. Further, it is a violation of Title 21, United States Code, Section 841(a)(1) for any person to distribute 50 grams or more of a mixture and substance containing methamphetamine, a Schedule II narcotic controlled substance. Your Affiant respectfully submits

that the defendant caught with more than 500 grams of a methamphetamine mixture and substance on his person is likely working with one or more other persons who are involved as his source(s) of supply or customers who consume and/or redistribute quantities of methamphetamine, all in violation of Title 21, United Sates Code, Section 846, Conspiracy.

3.      Your affiant presents this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is One, Black LG Smart Cellular Phone with a Black K10-Protective Case, One, Silver, LG, Model LG-H932 Smart Cellular Phone with Serial Number: 358165-08-109362, and One, Black, Lenovo N22 Laptop, Model 80S6, with Serial Number: YD02E8V7, hereinafter referred to as the "Devices." The Devices are currently located in the Denver, Colorado ATF Field Division, 950 17th St., Denver, Colorado 80202.

6.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      On Sunday, February 25, 2018, Officer Linn and Officer Moser of the Denver Police Department, observed a 2004 gold Aviator SUV bearing Colorado temporary license plate 021762X make an improper turn at the intersection of W 47th Ave and N Federal Blvd in Denver, Colorado. The vehicle was turning north onto N Federal Blvd from W 47th Ave. The officers were in the left hand through lane of N Federal Blvd approaching W 47th Ave. As the Aviator turned north onto N Federal Blvd the vehicle bypassed the right through lane and entered the left hand through lane in

violation of C.R.S. 42-4-901, Required Position and Method of Turning. As the Aviator made this improper turn, the driver cut off a white sedan traveling north in the right hand through lane causing the white sedan to brake in order to avoid a collision. Officer Moser initiated a traffic stop as it turned left (west) onto the westbound I-70 on ramp from N Federal Blvd. The vehicle slowed, pulled to the right, and stopped at the bottom of the on-ramp.

8.     Officer Moser contacted the driver and sole occupant of the vehicle, later identified via a Colorado Driver's License as William Blaze GEBERS (DOB: 01-10-1987), as Officer Linn stood at the passenger side of the vehicle. As Officer Moser spoke to GEBERS, Officer Linn observed him lift his buttocks off of the seat, arch his pelvis upwards, and reach into his right rear pants pocket in order to retrieve his wallet and driver's license. As William arched his pelvis upward, Officer Linn observed a cylindrical, cellophane wrapped object protruding approximately 3-4 inches from his front right pants pocket. Due to his training and experience, Officer Linn recognized this object to be consistent in size, shape, and packaging with narcotics.

9.     Officer Linn walked to the driver's side of the vehicle and told Officer Moser to remove GEBERS from the vehicle. Officer Linn attempted to open the driver's side door but it was locked. GEBERS attempted to roll his window up but Officer Linn was able to reach into the vehicle and unlock the door before GEBERS was able to block himself in. GEBERS was then removed from the vehicle.

10.     Officer Linn asked GEBERS what was in his pocket and he replied, "Meth." GEBERS was then placed into hand restraints without incident during which time he spontaneously uttered that there were two firearms in the car and he had 1.5 pounds of methamphetamine on his person.

11.     After placing GEBERS into hand restraints, Officer Linn retrieved the cellophane wrapped methamphetamine from GEBERS' front right pants pocket. A zip lock baggie containing methamphetamine was located in GEBERS front hoodie pocket.

12.     GEBERS was placed in a patrol vehicle and Mirandized. GEBERS stated he understood his rights and agreed to speak with Officer Linn without the presence of an attorney. GEBERS admitted possession of the 1.5 pounds of methamphetamine and two firearms. The first firearm, a Glock 43 bearing serial number BCFA176 was located between the driver's seat and the center console; a round was not chambered in the firearm but the magazine contained 9, live 9mm rounds therein. The second firearm, a Kahr K40 .40 caliber bearing serial number DF4932, was located inside the driver's side door panel; a round was not chambered in the Kahr but the magazine contained 6, live .40 caliber rounds. A second magazine for the Kahr was located in the same door panel and it contained 7 live, .40 caliber rounds. A search of William's criminal history revealed he was convicted of a felony charge in the State of Colorado on two separate occasions: Possession of Burglary Tools on October 20, 2008 (DKT D0302008CR000720) Aggravated Motor Vehicle Theft on 04/05/2010 (DKT D0302009CR002337).

13.     On May 10, 2018, SA Akerson received a Fingerprint Examination report from Teri Eklund.  Eklund is a Fingerprint Examiner from the Wyoming Division of Criminal Investigation. The report indicated Eklund compared two fingerprint cards taken on separate dates in the District of Colorado for William GEBERS. The findings concluded the two prints were identical, indicating they both belonged to GEBERS.

14.     The first fingerprint card was obtained from GEBERS' felony conviction on August 24, 2009 and the second fingerprint card was obtained from GEBERS' arrest by the Denver Police Department on February 25, 2018. In 2009, GEBERS was convicted of Burglary Tools – Possession, a felony, a felony conviction prohibiting him from possessing firearms.  On February 25, 2018, GEBERS was found in possession of two pistols and subsequently arrested. GEBERS' fingerprints were taken subsequent to his arrest in 2018.

15.     The fingerprint comparison indicated the William GEBERS convicted in 2009 was the same William GEBERS arrested on February 25, 2018.

16.     On May 2, 2018, SA Akerson examined the Glock pistol, model 43, 9mm caliber, serial number BCFA176 and the Kahr pistol, model K40, .40 caliber, serial number DF4932 at the Fort Collins Police Department. SA Akerson determined the Glock pistol was manufactured by Glock in Austria and imported in the United States by Glock, Inc. in Smyrna, Georgia. SA Akerson also determined the Kahr pistol was manufactured by Kahr Arms in Worcester, Massachusetts. Both aforementioned pistols are firearms as defined in Title 18, United States Code, Chapter 44, Section 921(a)(3) and were manufactured outside the state of Colorado.

17.     On August 1, 2018, a federal warrant was issued by US Magistrate Judge Nina Wang in Denver, CO for the aforementioned charges. On October 2, 2018, ATF Agents arrested GEBERS pursuant to the warrant. During a search incident to arrest, various items belonging to GEBERS were seized. Among the items seized were the aforementioned Devices, along with GEBERS' backpack, and a blue suitcase. GEBERS' backpack contained a scale and approximately 14 grams of suspected methamphetamine in a plastic baggie. The suitcase contained several glass pipes with suspected methamphetamine residue. The backpack and suitcase were transported to the Denver Field Division with all contents kept in their original packaging and placed in the evidence vault. The suitcase and backpack were transferred to the Cheyenne Field Office evidence vault.

18.     Based on my training and experience, I know that cellular devices can often be utilized to store information, including, but not limited to, text messages and call detail records, location information, applications used for messaging, website information, etc., all of which could pertain to GEBERS' illegal activities, including his illegal use of firearms, and his illegal use and possession of controlled substances.

19.     The Devices are currently in the lawful possession of ATF.  Your affiant seeks this warrant to authorize an examination of the Devices which will comply with the Fourth Amendment and other applicable laws.

20.     The Devices are currently in storage in the ATF Field Office, 950 17th St., Denver, Colorado. Through training and experience, your affiant knows that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same physical state as they were when the Devices first came into the possession of the ATF.

21.     Based on the foregoing information, Your affiant has probable cause to believe that evidence of crime, contraband, fruits of a crime, other items, illegally possessed, and property designed for use, intended for use or used in committing a crime, as set forth herein and in Attachment B, are currently located in property identified in Attachment A, incorporated by this reference. Your affiant, therefore, respectfully requests that a search warrant be issued authorizing the search of the items set forth in Attachment B.

## **TECHNICAL TERMS**

22.     Based on my training and experience, and consultation with other investigators, Your affiant uses the following technical terms to convey the following meanings:

　　　　a.     Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading

information from the Internet.   Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.      Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.   Each satellite

contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet

service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

23.     Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS, Personal Digital Assistant, containing an Internet Protocol Address, and utilize the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of

a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.*   Because this warrant seeks only permission to examine the devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.   Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28.     Your affiant submits that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

### **END OF AFFIDAVIT**

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*s/Jessica Akerson*
Jessica Akerson
*Federal Law Enforcement Officer, ATF*

Sworn to before me and submitted, attested to, and acknowledged by reliable electronic means this  17th  day of December, 2019.



UNITED STATES MAGISTRATE JUDGE

**Application for search warrant was reviewed and is submitted by Guy Till, Assistant United States Attorney.**

11